IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| DOROTHY B. EDWARDS, | ) | CIVIL ACTION NO: 4:05-721-HFF-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

## I.  PROCEDURAL HISTORY

The plaintiff, Dorothy B. Edwards, filed applications for DIB on September 9, 2002, alleging inability to work since June 30, 2001, due to injury to the right knee and pain (Tr. 58, 69). Her applications were denied at all administrative levels and upon reconsideration. Following a hearing held on April 9, 2004, (Tr. 200-216), the ALJ issued a decision on July 8, 2004 (Tr. 12-17), that

plaintiff retained the residual functional capacity (RFC) to perform light[1] work, that performance of her past relevant work as a janitor was not precluded by her RFC and that plaintiff was not disabled within the meaning of the Act.  The Appeals Council denied plaintiff's request for review (Tr. 4-6), thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review under.  See 20 C.F.R. § 404.981 (2005).

## II.  FACTUAL BACKGROUND

The plaintiff, Dorothy B. Edwards, was born May 8, 1944 (Tr. 58), and was 60 years old at the time of the ALJ's decision. (Tr. 13, 58).   Plaintiff has a tenth grade education and has past relevant work as a cook and janitor. (Tr. 70-75).

## III.  DISABILITY ANALYSIS

The plaintiff's arguments consist of the following:

(1)   The findings and conclusions of the ALJ are not supported by substantial evidence and correct under controlling law.

  (A)   The ALJ erred as a matter of law by finding Ms. Edward's assertions regarding her ability to work not credible.

  (B)   The ALJ failed to properly consider the medical evidence and the vocational expert's testimony regarding Ms. Edwards' residual functional capacity to return to her past relevant work.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting up to 10 pounds. 20 C.F.R. § 404.1567(b) (2005).

In the decision of July 8, 2004, the ALJ found the following:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial activity since after her alleged onset of disability.

3. The claimant's status post knee surgery is a severe impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1521 and 416.921).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR §§ 404.1527 and 416.927).

7. The claimant has the following residual functional capacity: light work.

8. The claimant's past relevant work as janitor did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9. The claimant's medically determinable status post knee surgery does not prevent the claimant from performing her past relevant work.

10. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence[2] and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an

---

[2] Substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can

perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV.  MEDICAL REPORTS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case.   The medical records as set out by the defendant have not been disputed by the plaintiff and plaintiff did not set out a summary of the medical records in her memorandum. Therefore, the undisputed and relevant medical evidence as stated by the defendant is set forth herein.

On June 1, 2001, plaintiff presented to Oliver Harden, M.D., with complaints of persistent right knee pain for the last several months.  An MRI demonstrated degenerative cysts in the posterior horn of the lateral meniscus and a complete tear of the posterior horn of the medial meniscus (Tr. 157-158).

On July 18, 2001, plaintiff presented to Thomas Terrell, M.D., with complaints of right knee pain.  Plaintiff reported that the pain was worse when she went down stairs. Dr. Terrell noted that an MRI demonstrated a tear of the medial meniscus and also noted that plaintiff used cigarettes. Examination of plaintiff's right knee revealed medial joint line tenderness, no significant swelling, and medial joint pain upon full flexion. Plaintiff was referred to Angus McBryde, M.D. (Tr. 152).

On July 23, 2001, plaintiff presented to Dr. McBryde for evaluation of her right knee. Plaintiff reported that she had injured her knee in 1993 but that it had done pretty well until she began to have some recent discomfort.  It was noted that plaintiff drives, smokes and drinks. Examination revealed good movement of the upper extremities, straight spine, level pelvis, good

movement of the hips, good movement of both knees, tenderness about the right lateral meniscus, and medial meniscus, minimal joint fusion, no motor deficit, and an ability to toe and heel walk well (Tr. 171-172).

On September 5, 2001, Dr. McBryde performed a partial medial meniscectomy and a chondroplasty of the medial femoral condyle (Tr. 176).

On September 17, 2001, Dr. McBryde noted that plaintiff had improved and was doing very well. He also noted that plaintiff needed physical therapy and wrote a prescription (Tr. 170).

On October 18, 2001, Eloise Bradham, a State agency medical consultant, determined that plaintiff's right knee condition was a non-severe impairment (Tr. 196).

At a followup appointment on January 10, 2002, plaintiff complained of right knee pain. Examination revealed full extension of the right knee, minimal effusion and some medical joint line tenderness. Dr. McBryde noted that plaintiff's quadriceps were adequate. At a followup examination on January 31, 2002, Dr. McBryde noted that plaintiff walked fairly well and had subjective pain, but that her quadriceps and hamstrings were not rebuilt as needed. He also noted that plaintiff was fairly active and was raising a recent grandchild. (Tr. 168-169).

On October 25, 2002, plaintiff presented to Edward Berg, M.D., for a consultative medical examination at the request of the State agency. Plaintiff presented with complaints of left knee and lower back pain. She reported no improvement in her knee pain since her surgery. She reported that her husband was on disability, they had temporary custody of their 10-month old grandchild, she could sit for one hour, stand for 15 minutes and walk three blocks. She also reported that she seldom drove. Dr. Berg noted that plaintiff had a marked antalgic gait to the right. Examination revealed an ability to squat to 50 percent of the norm and heel and toe walk, pain to the right knee upon

straight leg raising but no back pain, pinprick sensation within normal limits, hyperlordosis (exaggerated curve of the lumbar spine), no muscle spasm or tenderness of the back, forward flexion of 90 degrees, extension and lateral bend of 10 degrees, normal motion of the left knee, and no instability of the right knee. Dr. Berg's impression was degenerative joint disease of the right knee and chronic low back pain. An MRI of plaintiff's lumbar spine demonstrated minimal diffuse spondylosis (degenerative disease of the spine), some small marginal osteophytes (bony outgrowths) at numerous levels, fairly well maintained disc space, and no evidence of fractures or subluxation. An MRI of plaintiff's left knee demonstrated no evidence of fractures or sublaxation, well maintained joint space, and no joint effusion. (Tr. 180-183).

On December 31, 2002, J. H. Weston, M.D., a State agency medical consultant, determined that plaintiff's knee and back condition were non-severe impairments (Tr. 195).

## V. ARGUMENT

Plaintiff argues that the ALJ failed to consider the effects of the plaintiff's pain upon her ability to work and committed error when he found that plaintiff's subjective complaints are not consistent with the medical evidence and are not fully credible.

Defendant asserts that the ALJ properly assessed plaintiff's credibility and took into account her subjective complaints. Defendant argues that the ALJ properly concluded that plaintiffs' testimony was not credible to the extent she claimed she was precluded from performing all substantial gainful activity.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson, 402 U.S. at 390. Even where the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989.

As to allegations of pain, the Fourth Circuit has often repeated that, "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain, such as heat, swelling, redness and effusion." Craig, 76 F.3d at 592 (identifying two-step process by which ALJ must first determine if the claimant has demonstrated by objective medical evidence an impairment capable of causing the pain alleged and if so, must then assess the credibility of the claimant's subjective accounts of pain); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990).

The Commissioner has promulgated Ruling 96-7p to assist ALJs in determining when credibility findings about pain and functional effect must be entered, and what factors are to be weighed in assessing credibility. The Ruling directs that,

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects . . .

9

> An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
>
> . . .
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

Ruling 96-7p (emphasis added).

The ALJ cited numerous reasons in his decision for finding that plaintiff's credibility was not without question. For instance, the ALJ concluded that:

> The claimant testified to pain in her hands, but there is no medical evidence to support her allegation. She reported back pain, but had negative straight leg raises, with no muscle spasms or tenderness. X-rays of the back showed only minimal, diffuse spondylosis of the back. The claimant testified that she is the primary caregiver to her toddler grandchild, and is able to cook, clean, and push a stroller. The testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of her limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.

(Tr. 15).

There is substantial evidence to support the ALJ's decision as to plaintiff's allegations as to her impairments. The ALJ properly considered the inconsistencies between plaintiff's testimony and

other evidence of record in evaluating the credibility of plaintiff's subjective complaints. Based on the medical records, plaintiff had not been treated for her right knee since January 2002. Plaintiff testified to chronic back pain, but had no records indicating that she had received any treatment for back pain. Plaintiff testified that she had a limited ability to stand and walk. It is noted that no physician placed any restrictions or limitations on plaintiff's activities including her surgeon. Further, no physician stated that she was disabled from her previous job or from any employment. Additionally, X-rays of the back showed only minimal, diffuse spondylosis of the back and straight leg raises caused pain in the right knee, but not back pain, pinprick sensation was within normal limits, there was a hyperlordosis[3] with no muscle spasm or tenderness of the back. (Tr. 180). Plaintiff testified that she has burning in her hands and arms and has trouble gripping objects. However, there is no medical evidence that she sought or received treatment for that condition. At the hearing, plaintiff testified that she can sit for only 20-30 minutes and walk 1-2 blocks, but she reported to Dr. Berg that she could sit for one hour and walk three blocks. (Tr. 209, 180). Further inconsistencies are that she testified that she does not smoke but the medical records state that she uses cigarettes. (Tr. 152, 171). Additionally, plaintiff testified that she does not drink, but the medical records indicate that she "drinks as well as drinking at night, a fuzzy amount." (Tr. 171).

      Plaintiff argues that the ALJ incorrectly found that she is able to cook and clean. However, a review of the ALJ's decision reveals that the ALJ stated that "She is able to cook with assistance from her husband, sweep, and mop 'a little.'Her daily activities include watching television, and pushing the baby in her stroller." (Tr. 15). A review of the hearing transcript reveals that plaintiff

---

[3] Lordosis is defined as an exaggerated forward curvature of the lumbar and cervical regions fo the spinal column. MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY (1996).

testified that she cooks sometimes and if she does not cook, her husband cooks. She also testified that a lot of times, she will put the food on and her husband will check on it while she sits down. Plaintiff also testified that she is able to do a "little bit" of housework such as sweeping and "a lot of times, I'll mop the kitchen." (Tr. 212). Plaintiff's surgeon stated she was fairly active and was raising a recent grandchild. (168).

The ALJ's evaluation of plaintiff's subjective complaints complies with the Fourth Circuit precedent and the Commissioner's regulations. The ALJ adequately addressed each complaint, as discussed, and explained his evaluation. Therefore, the undersigned concludes that there is substantial evidence to support the ALJ's determination as to plaintiff's complaints of pain and her credibility based on the objective medical evidence. While the plaintiff may have limitations, there is substantial evidence to support the ALJ's decision that they are not so severe as to preclude her from the demands of work.

Next, plaintiff argues that the ALJ failed to consider the medical evidence and the vocational expert's (VE) regarding her residual functional capacity to return to her past relevant work. Plaintiff asserts that the ALJ's conclusion that she had the ability to return to her past relevant work as a janitor conflicts with the established medical evidence in the record and plaintiff's testimony. Specifically, plaintiff asserts that the ALJ failed to consider her knee pain and resulting limitations which would restrict her ability to stand and walk, thereby preventing her from performing light work in the general economy. Plaintiff asserts that the VE made no testimony regarding her residual functional capacity but only testified that her position as a janitor was unskilled and at the upper range of light exertion while her cook position was at the low end of semiskilled and at the upper range of light exertion. (Plaintiff's brief).

Defendant argues that it is the ALJ's responsibility at the hearing level to assess an individual's residual functional capacity (RFC). Defendant asserts that after considering all the evidence of record, the ALJ determined that plaintiff retained the RFC to perform light work. Based upon the VE's testimony that plaintiff's past relevant work was classified as light work, the ALJ properly determined that the performance of plaintiff's past relevant work was not precluded by her RFC and, therefore, she was not disabled.

The purpose of a vocational expert's testimony is to assist the ALJ in determining whether jobs exist in the economy which a particular claimant could perform. Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). The ALJ found that the plaintiff has the RFC to perform light work. (Tr. 17). The VE testified that plaintiff's past work as a janitor was considered light work. As stated above, there is substantial evidence to support the ALJ's finding with regard to plaintiff's credibility. Therefore, based on the evidence, there is substantial evidence to support the ALJ's finding as to plaintiff's RFC. Thus, based on the testimony of the VE, there is substantial evidence to support the ALJ's finding that plaintiff could perform her past relevant work. Plaintiff has not presented any evidence that she is limited from performing her past relevant work such as to find the ALJ's decision was not based on substantial evidence. As previously discussed, no physician placed any restrictions on plaintiff's ability to stand and/or walk. Therefore, based on the evidence, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

## VI.  CONCLUSION

Despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this court concludes that the ALJ's

findings are supported by substantial evidence and recommends the decision of the Commissioner be affirmed. Therefore, it is

RECOMMENDED that the Commissioner's decision be AFFIRMED.

                                        Respectfully submitted,

                                        s/Thomas E. Rogers, III
                                        Thomas E. Rogers, III
                                        United States Magistrate Judge

July 21, 2006
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" &
### The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk<br>
United States District Court<br>
Post Office Box 2317<br>
Florence, South Carolina 29503